**In re COUNTRY CLUB MARKET, INC., Debtor.**

**DAIRY FRESH FOODS, INC., Plaintiff,**

v.

**James E. RAMETTE, Trustee, Defendant.**

**Bankruptcy No. 4–91–5834.
Adv. No. 4–93–123.**

United States Bankruptcy Court, D. Minnesota.

Dec. 29, 1993.

Clinton E. Cutler, Fredrickson & Byron, Minneapolis, MN, for plaintiff.

Randall L. Seaver, Morris, Fuller & Seaver, Minneapolis, MN, for defendant.

## ORDER FOR SUMMARY JUDGMENT

ROBERT J. KRESSEL, Bankruptcy Judge.

This adversary proceeding came on for hearing on the parties' cross-motions for summary judgment. Clinton E. Cutler appeared for the plaintiff and Randall L. Seaver appeared for the defendant. This court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and Local Rule 201. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K).

### FACTS

On August 26, 1991, the debtor, Country Club Market, Inc., filed a Chapter 11 bankruptcy petition. Both prior to and during its Chapter 11 case, the debtor owned and operated several supermarkets in the Minneapolis–St. Paul metropolitan area. In this capacity, the debtor purchased wholesale quantities of food products to resell on the retail market. The plaintiff, Dairy Fresh Foods, Inc., is a wholesaler who regularly

sold the debtor dairy and food products, including juices, fruit-flavored drinks, and punch. Between August 10 and August 31, 1991, the debtor received goods from the plaintiff for which payment had not been made at the time of filing. During this period, the debtor was also billed for deposits and credited for the return of bottles, pallets, and cases. The debtor's net account to the plaintiff totaled $186,895.94.

On September 26, 1991, pursuant to Minn. Stat. § 27.138,[1] the plaintiff filed a beneficiaries notice of intent to preserve trust assets for the amount owed. Subsequently, the debtor paid the plaintiff $17,152 in settlement of the plaintiff's reclamation claim under 11 U.S.C. § 546(c) and Minn.Stat. § 336.2–702. The debtor converted its case to a Chapter 7 case on December 17, 1992. The defendant was appointed trustee.

The plaintiff commenced this adversary proceeding under Minn.Stat. § 27.138 seeking judgment in the amount of $169,743.94 plus pre-judgment interest. The plaintiff argues that Minn.Stat. § 27.138 creates a trust for the benefit of unpaid sellers such as Country Club, and that, as such, the proceeds of the trust are not part of the debtor's estate and should be turned over by the trustee to the plaintiff. The plaintiff also argues that, as a trust, this claim is not voidable by the trustee under 11 U.S.C. § 545.

## DISCUSSION

This proceeding raises the question whether Minn.Stat. § 27.138 creates a trust or a statutory lien. If the statute creates a statutory lien, then the next question is whether that lien is avoidable by the defendant under 11 U.S.C. § 545. Since I conclude that the statute created a statutory lien in favor of the plaintiff which is avoidable by the defendant, I need not address any of the other arguments of the parties.

1. The Minnesota Wholesale Produce Dealers Act.

2. *See generally,* William W. Schwarzer, Allan Hirsch, David J. Barrans, *The Analysis and Decision of Summary Judgment Motions; A Monograph on Rule 56 of the Federal Rules of Civil Procedure,* 139 F.R.D. 441 (1992); George Loewenstein, *Second Thoughts about Summary Judgment,* 100 Yale L.J. 73 (1990); Louis, *Federal*

## I. Summary Judgment May Be Granted When There Are No Genuine Issues of Material Fact[2]

Summary judgment plays a very important role in the judicial process by allowing the judge to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial". Fed.R.Civ.P. 56 advisory committee note. The importance of summary judgment cannot be overemphasized. Indeed, "[s]ummary judgment ... is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

Summary judgment will be granted if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).[3] "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### A. The Burdens

### 1. The Moving Party

Initially, the burden is on the party seeking summary judgment. It is the moving party's duty to inform the court of the basis for the motion and to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 324. The

*Summary Judgment Doctrine: A Critical Analysis,* 83 Yale L.J. 745 (1974); Currie, *Thoughts on Directed Verdicts and Summary Judgment,* 45 U.Chi.L.Rev. 72 (1977).

3. Rule 56 applies in this proceeding pursuant to Fed.R.Bankr.P. 7056.

moving party must show the court that there is an absence of evidence to substantiate the non-moving party's case. *Id.* at 325. To that end, the movant discharges its burden by showing that the record does not contain a triable issue and by identifying that part of the record which supports the moving party's assertion. *See Id.* at 323, 106 S.Ct. at 2553; *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir.1988).

### 2. The Non-moving Party

Once the movant has made its showing, the burden of production shifts to the non-moving party. The non-moving party must "go beyond the pleadings and by [its] ... own affidavits, or by the depositions, answers to interrogatories, and admissions on file" to establish that there are specific and genuine issues of material fact warranting a trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). The non-moving party cannot cast some metaphysical doubt on the moving party's assertion. *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, the non-moving party must present specific, significant, and probative evidence supporting its case, *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990) which is sufficient enough "to require a ... judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). Any affidavits must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). If,

however, the evidence tendered is "merely colorable" or is "not significantly probative", the non-moving party has not met its burden and the court must grant summary judgment to the moving party. *Id.* at 249–50, 106 S.Ct. at 2511. Here, no material facts are in dispute.[4] Accordingly, summary judgment may be entered as a matter of law.

### II. Minn.Stat. § 27.138 Does Not Create a Trust

A trust is an intentional fiduciary relationship with respect to property in which a party holding title to property is obliged to keep or use that property for the benefit of another. RESTATEMENT (SECOND) OF TRUSTS § 2 (1959).[5] An express trust is a trust which is created by direct, express terms for a specific purpose. BLACK'S LAW DICTIONARY 1511 (6th ed. 1990). In a bankruptcy setting with the rights of creditors at stake, a trust will not be recognized unless the requirements of a trust relationship are present. *Evans Fur Company of Houston, Inc. v. Chase Manhattan Bank, N.A. (In re Sakowitz)*, 949 F.2d 178 (5th Cir.1991). In the present case, the plaintiff argues that Minn.Stat. § 27.138 creates an express trust for the benefit of unpaid sellers. The plaintiff bases its argument on the premise that the legislature's use of the term, "trust", indicates an intention to create a trust relationship between a wholesale produce purchaser and an unpaid seller.[6] I disagree. The word, "trust", in itself is not enough to create the trust relationship. It is well established that "talismanic language [cannot] throw a protective mantle over [funds] in the absence of a genuine trust mechanism." *In re Morales Travel Agency*, 667 F.2d 1069, 1071 (1st Cir.1981). *See also In re Sakowitz, Inc.*, 949 F.2d at 182 (5th Cir.1991); *Barclays American/Business Credit, Inc. v. Long (In re Long)*, 44 B.R. 300, 305 (Bankr.

---

**4.** The parties have stipulated to the relevant facts.

**5.** Defining a trust as "... a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a manifestation of an intention to create it."

**6.** Minn.Stat. § 27.138 provides, in part:

> **Subdivision 1. Trust establishment and maintenance.**
> (a) The produce and products of produce of a wholesale produce dealer and proceeds are held in trust for the benefit of unpaid sellers.

D.Minn.1983), *aff'd,* 744 F.2d 875 (8th Cir. 1985); *MacArthur Co. v. Crea (In re Crea),* 31 B.R. 239 (Bankr.D.Minn.1983). "If a ritualistic incantation of trust language were deemed conclusive, it would be a simple matter for one creditor, at the expense of others, to circumvent the rules pertaining to the creation of bona fide security interests." *In re Sakowitz, Inc.,* 949 F.2d at 181. Therefore, to demonstrate that Minn.Stat. § 27.138 creates an express trust, the plaintiff must show that the statute establishes the basic requirements of a trust relationship.

■ The fundamentals of an express trust relationship are

(1) a designated trustee subject to enforceable duties,

(2) a designated beneficiary vested with enforceable rights, and

(3) a definite trust res wherein the trustee's title and estate are separate from the beneficiary's vested interest.

*Bush v. Crowther (In re Bush's Trust),* 249 Minn. 36, 81 N.W.2d 615 (1957). The Restatement (Second) of Trusts defines the trustee's obligations to the trust and its beneficiaries and imposes a fiduciary duty upon the trustee to:

1. administer the trust

2. act with loyalty

3. keep and render accounts

4. furnish information

5. exercise reasonable care and skill

6. take and keep control

7. preserve the trust property

8. keep trust property separate

9. deal impartially with the beneficiaries.

RESTATEMENT (SECOND) OF TRUSTS §§ 169– 185 (1959). Case law discussing trust relationships imposes a similar duty upon the trustee and defines the fiduciary obligation as the cornerstone of the trust relationship. *See Devaney v. Dloogoff (In re Dloogoff),* 600 F.2d 166, 170 (8th Cir.1979) (a trust cannot be formed unless there is a fiduciary relationship); *In re Bush's Trust,* 81 N.W.2d at 624 (the existence of an express trust creates a fiduciary responsibility). Case law also

imposes a trust relationship when one takes on an affirmative duty to deal as a fiduciary of certain property for the sole benefit of another. *In re Penn–Dixie Steel Corp.,* 6 B.R. 817, 823–24 (Bankr.S.D.N.Y.1980), *aff'd,* 10 B.R. 878 (S.D.N.Y.1981).

The fiduciary responsibility, which is the "highest standard of duty implied by law", creates an obligation to act for someone else's benefit while subordinating one's own interest to that of the other person. BLACK'S LAW DICTIONARY 625 (6th ed. 1990).

■ This standard of duty extends beyond acting for the beneficiary's benefit; it prohibits the trustee from profiting at the expense of the trust beneficiary. RESTATEMENT (SECOND) OF TRUSTS § 170(1) (comment (a)). "Not honesty alone, but a punctilio of honor the most sensitive is the standard of behavior required of a trustee. [The trustee] must completely efface self-interest. [The trustee's] loyalty and devotion to his trust must be unstinted. It's well-being must always be his first consideration. These principles are inveterate and unbending." *Wootten v. Wootten,* 151 F.2d 147, 149–50 (10th Cir.1945). Minn.Stat. § 27.138 imposed no such duty on the debtor. There is nothing in the language of the statute to even suggest that such a duty exists. Rather, the statute creates a debtor-creditor relationship with no obligation on the debtor to administer the assets with loyalty to the creditor.

This lack of a fiduciary obligation attains even greater significance when you consider the absence of the other fundamentals of a trust relationship, like the permissive commingling and the debtor's unrestricted use of the funds, for example, to pay for rent, salaries, and other supplies, etc. These considerations clearly lead to the conclusion that no trust relationship was created by Minn.Stat. § 27.138. Under the basic principles of trust law, a trustee is obliged to preserve and segregate any trust property.[7] The statute does not create such an obligation. In fact, the statute expressly permits a debtor to commingle and use the "trust" assets for its own benefit rather than for any supposed beneficiaries. Subsection (1)(b) establishes a

---

7. *Supra,* n. 5.

nonsegregated floating trust[8] which allows a wholesale produce dealer to use the assets for its own benefit. Such an advantage is contrary to the principles of the fiduciary relationship and the concept of a trust.[9] Although, today, commingling of trust assets is not determinative of the existence of a trust, "... one factor in distinguishing between a trust relationship and an ordinary debt is whether or not the recipient of the funds was entitled to use the funds as his own, and commingle the funds with his own." *In the Matter of Penn Central Transportation Co.,* 392 F.Supp. 960, 962 (E.D.Pa.1975). While commingling is permitted, the trustee has a duty to keep on hand the amount of the trust property. RESTATEMENT (SECOND) OF TRUSTS §§ 179 (comment f). There is no such provision under Minn.Stat. § 27.138.

The indicia of the trust mechanism are not present here. The absence of these fundamentals makes it clear that the legislature did not intend to create a trust relationship through the statute. "In the absence of any provision requiring [a party] to hold the funds in trust by keeping them separate, and otherwise restricting their use, the label "trust" could in these circumstances and for present purposes have no legal effect." *In re Sakowitz,* 949 F.2d at 182. The statute creates a simple debtor-creditor relationship in spite of its use of the term, "trust".[10] Minn. Stat. § 27.138 is a thinly disguised attempt to give one class of unsecured creditors an advantage over other unsecured creditors such as employees, utilities, and other suppliers.

### III. Minn.Stat. § 27.138 Creates a Statutory Lien

■ If Minn.Stat. § 27.138 does not create a trust, what does it create? The Bankruptcy Code defines a lien as "a charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). A statutory lien is a lien arising "solely by force of a statute on specified circumstances or conditions." 11 U.S.C. § 101(53). Minn.Stat. § 27.138 creates such a statutory lien. The statute simply gives an unpaid seller an interest in its produce, the proceeds generated from the produce and the products of produce. This interest is an attempt by the legislature to provide a means for an unpaid seller to recover on its claim.[11] Contrary to the plaintiff's argument, the statute does not create anything more than such a lien.

### IV. The Statutory Lien is Avoidable under 11 U.S.C. § 545(2)

The plaintiff contends that, even if Minn. Stat. § 27.138 creates a statutory lien, Dairy Fresh's interest in the assets is not avoidable under 11 U.S.C. § 545(2) because its lien was perfected upon delivery of the produce to the debtor. For reasons set forth below, I disagree. The Bankruptcy Code permits a trustee to avoid a statutory lien if it is unperfected or unenforceable against an entity acquiring the rights of a bona fide purchaser at the time of the commencement of the bankruptcy case, whether or not such a purchaser

---

**8.** Minn.Stat. § 27.138(1)(b) states:

The trust assets are to be maintained as a nonsegregated floating trust. Commingling of the trust assets is contemplated.

**9.** Although Minn.Stat. § 27.138(1)(c) prohibits a debtor from diverting his assets so as to impair a creditor's ability to recover on his claim, § 27.-138(1)(b) expressly permits a debtor to commingle the "trust" assets. Thus, the legislature differentiates between a debtor impairing the ability of a creditor to recover an amount due and profiting through transactions with that creditor.

**10.** I find this case to be very similar to the case, *Lord's, Inc., v. Maley,* 356 F.2d 456 (7th Cir. 1966). Here, despite language in a contract expressly purporting to create a trust, the court

relied on the fact that the debtor could permissibly commingle and use the assets to find a creditor-debtor relationship. *See also In re Sakowitz,* 949 F.2d 178 (5th Cir.1991); *In re Morales Travel Agency,* 667 F.2d 1069 (1st Cir.1981); *Carlson, Inc. v. Commercial Discount Corp.,* 382 F.2d 903 (10th Cir.1967).

**11.** Minn.Stat. § 27.138(4)(a) establishes a ladder of priority, giving the unpaid seller's claim precedence over other liens, security interests, and encumbrances in the proceeds. It provides:

The unpaid seller's interest in trust assets is paramount to all other liens, security interests, and encumbrances in the trust assets. An unpaid seller who recovers trust assets recovers them free of any liens, security interests, or encumbrances.

exists.[12] For purposes of § 545(2), the trustee is given the status of a hypothetical bona fide purchaser, a status acquired as of the date of the filing of the bankruptcy petition. KING, 4 COLLIER ON BANKRUPTCY § 545.04 (15th ed. 1985). Therefore, the enforceability of a statutory lien depends on whether it was perfected as of the date of the filing of the bankruptcy petition. Under Minn.Stat. § 27.138, an unpaid seller's claim is perfected and thus enforceable against a bona fide purchaser if the claimant files a beneficiaries notice for inadequate value "by 40 days after the due date for the payment to the seller or 40 days after a payment instrument to the seller for the produce is dishonored, whichever is later." Minn.Stat. § 27.138(2)(b). As a result, in order for the plaintiff's claim to be unavoidable under § 545(2), the plaintiff must have filed a beneficiaries notice by the time of the commencement of the debtor's bankruptcy case. Here, the plaintiff did not file a beneficiaries notice until September 26, one month after the filing of the debtor's petition. Therefore, the plaintiff's claim did not satisfy the enforceability requirements of § 545(2) and was unperfected and unenforceable against a bona fide purchaser at the time of the commencement of this bankruptcy case. The plaintiff's claim can thus be avoided by the trustee under § 545(2).

The statute itself also makes the lien unenforceable against a bona fide purchaser. As noted in the following section, the debtor could have transferred title to a bona fide purchaser as long as that purchaser is not another wholesale produce dealer or part of a transaction intended to impair the debtor's ability to pay sellers or for inadequate value. Minn.Stat. § 27.138, subd. (1)(e).

## V. The 11 U.S.C. § 546(b) Exception is Inapplicable in This Case

 Under certain conditions, 11 U.S.C. § 546(b) limits a trustee's § 545(2) power to avoid a statutory lien. Section 546(b) states, in part:

> The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

11 U.S.C. § 546(b). This section, together with 11 U.S.C. § 362(b)(3) allows an interest holder to perfect its lien against another entity acquiring rights in the property before such perfection occurs if the interest holder could have timely perfected its claim but for the bankruptcy petition. Section § 546(b) uses applicable state and federal law to determine the time limit for such perfection to occur. KING, 4 COLLIER ON BANKRUPTCY § 546.03 (15th ed. 1985). Here, the applicable law is Minnesota law.

Therefore, if under Minnesota law the plaintiff still had, at the time of bankruptcy, the opportunity to perfect its lien against another intervening interest, then the plaintiff may perfect its claim against the trustee if the claim would have been enforceable against a bona fide purchaser but for the filing of the bankruptcy petition. Minnesota's mechanics lien law, Minn.Stat. § 514.01, *et seq.*, is an example of a statute which allows later perfection to cut off intervening rights. *See Victoria Grain Co. v. Janesville Elevator Construction, Inc. (In re Victoria Grain Co.)*, 45 B.R. 2 (Bankr.D.Minn.1984).

I find no such enforceability here. The plaintiff's statutory lien claim was unenforceable against a bona fide purchaser at the time of the filing of the bankruptcy petition and a filing under Minn.Stat. §' 27.138, subd. (1)(e) would not change that.

A bona fide purchaser is defined as "[o]ne who has purchased property for value without any notice of any defects in the title of the seller." BLACK'S LAW DICTIONARY 177

---

12. 11 U.S.C. § 545 provides, in part:
The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

 . . . . .

 (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

(6th ed. 1990). Under applicable Minnesota law, any entrusting of the possession of goods to a merchant who deals in goods of that kind gives him the power to transfer all rights of the entruster to a buyer in the ordinary course of business. Minn.Stat. § 336.2–403(2). Moreover, a buyer in the ordinary course of business takes the goods free and clear of any security interest created by the seller, regardless of whether the security interest is perfected and the buyer is aware of its existence. Minn.Stat. § 336.9–307(1).

Minn.Stat. § 27.138(1)(e) provides that:

A wholesale produce dealer holds trust assets in trust for the seller, except that the wholesale produce dealer may transfer title to trust assets if the proceeds of the transfer are maintained as trust assets. Until a seller is paid, a wholesale produce dealer does not transfer title to trust assets:

(1) in a transaction made to another wholesale produce dealer;

(2) in a transaction intended to impair the ability of unpaid sellers to recover amounts due; or

(3) for which the value is inadequate to satisfy filed beneficiaries notices....

By implication and in keeping with other applicable Minnesota law, a dealer may transfer title in the trust assets in all other situations. For example, the debtor may sell assets to retail buyers or pay its employees and other expenses free and clear of the seller's claims. The seller's lien is unenforceable against such bona fide purchasers. Furthermore, such a lien is also unenforceable against a trustee as a bona fide purchaser and, therefore, the trustee may avoid the lien.[13]

In this case, Country Club Market, as a merchant who deals in goods of the same kind, sells to consumers goods purchased on a wholesale basis from the plaintiff free of the plaintiff's liens. A filing under Minn. Stat. § 27.138(2)(b) would not change that. Even after perfecting its lien, the plaintiff would have no right to go back and recover assets sold to consumers or money paid to employees or other suppliers. Therefore, the fact that the plaintiff timely perfected its claim under § 546(b) does not affect the enforceability of his claim as against any bona fide purchasers at the time of the bankruptcy petition. Perfection under § 27.138(2)(b) is not retroactive but rather looks to the enforceability of the plaintiff's claim as against current or future claim holders. As such, the § 546(b) exception to § 545(2) does not apply in this case and the plaintiff's claim is unperfected and unenforceable against the trustee as a bona fide purchaser at the time of the filing of the petition.[14] Therefore, the trustee may avoid the plaintiff's statutory lien claim of $169,743.94 plus pre-judgment interest.

## VI. Conclusion

I hold that the provisions under Minn.Stat. § 27.138 fail to create a trust despite "trust" language in the statute. Because the plaintiff's statutory lien claim was unperfected and unenforceable against a bona fide purchaser at the time of the commencement of the bankruptcy petition, the claim is avoidable by the trustee under 11 U.S.C. § 545(2).

THEREFORE, IT IS ORDERED:

1. The plaintiff's motion for summary judgment is denied.

2. The defendant's motion for summary judgment is granted.

3. The plaintiff's statutory lien (denominated a trust) is void.

4. The defendant holds no property in trust for the plaintiff.

5. The plaintiff shall recover nothing from the defendant on its complaint.

13. *See* KING ET AL., COLLIER ON BANKRUPTCY § 545.04 (15th ed. 1993) (the trustee is given the status of a hypothetical bona fide purchaser, effective as of the date of the filing of the petition).

14. As § 546(b) does not apply in this case, the § 362(b)(3) exception to the automatic stay is inapplicable. Therefore, the plaintiff's post-petition perfection of its statutory lien claim is a violation of 11 U.S.C. § 362(a)(5) which operates as a stay against "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of this case under this title."

LET JUDGMENT BE ENTERED AC-
CORDINGLY.