In re COUNTRY CLUB MARKET,
INC., Debtor.

DAIRY FRESH FOODS, INC.,
Plaintiff/Appellant,

v.

James E. RAMETTE, Trustee of the
bankruptcy estate of Country Club
Market, Inc., Defendant/Appellee.

Civ. File No. 3–94–45.

United States District Court,
D. Minnesota,
Third Division.

June 27, 1994.

Clinton E. Cutler, Kimberly J. Nordby, Fredrikson & Byron, Minneapolis, MN, for Dairy Fresh Foods, Inc.

Randall Lee Seaver, Morris Fuller & Seaver, Minneapolis, MN, for James E. Ramette, Trustee of the Bankruptcy Estate of Country Club Market, Inc.

## ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Plaintiff's appeal of the Order for Summary Judgment issued by the bankruptcy court on December 29, 1993. 162 B.R. 226. Upon a *de novo* review of the pleadings, memorandum of counsel, and the entire file, this Court reverses the bankruptcy court and holds that as a matter of law Minn.Stat. § 27.138 creates a statutory trust and that the funds held in trust are not property of the Debtor's estate. Further, the said trust is not avoidable under 11 U.S.C. § 545(2). This matter is remanded to the bankruptcy court for further proceedings consistent with this Order.

### PROCEDURAL HISTORY

The bankruptcy court decided this adversary proceeding on cross-motions for summary judgment. Stipulated facts were submitted to the court and there are no material facts in dispute. The legal issue presented is apparently one of first impression.

### FACTUAL BACKGROUND

Country Club Market, Inc. (Debtor) operated a chain of retail grocery stores in the Twin Cities for over 40 years prior to its bankruptcy filing. In the course of its business, Country Club bought wholesale quantities foods which it would sell in its stores in the area.

Dairy Fresh, Inc., the Plaintiff/Appellant, sold wholesale quantities of fruit juices, produce and dairy products to Debtor. Between August 10, 1991, and August 31, 1991, Debtor bought products from Plaintiff totalling $186,895.94. Debtor received and accepted all invoiced shipments that Dairy Fresh delivered. Debtor failed to pay those invoices and filed for Chapter 11 relief under the United States Bankruptcy Code on August 26, 1991.

On September 26, 1991, Plaintiff filed a Beneficiaries' "Notice of Intent to Preserve Trust Assets" with the Minnesota Secretary of State pursuant to the Minnesota Wholesale Produce Dealers Act, (the "WPDA"), Minn.Stat. § 27.138, Subd. 3, for the unpaid invoices. Subsequently, Debtor paid Dairy Fresh $17,152.00 in partial settlement of Dairy Fresh's reclamation claim against Debtor under 11 U.S.C. § 546(c) and Minn. Stat. § 336.2–702. The terms of the partial settlement were approved by the bankruptcy court. After payment of Dairy Fresh's reclamation claim, Country Club still owed Dairy Fresh $169,743.94, plus pre-judgment interest. Debtor and its trustee-in-bankruptcy did not turn over the funds to Dairy Fresh, claiming that all funds were property of the estate. The Debtor converted its case to a Chapter 7 case on December 17, 1992. On March 23, 1993, Dairy Fresh commenced an adversary proceeding against Appellee, as successor trustee for the estate of Debtor, seeking immediate possession of the funds held in trust pursuant to the WPDA.

Plaintiff argues, and the Court agrees, that the $169,743.94 represent trust assets and are not property of the estate pursuant to Minn.Stat. § 27.138.

**DISCUSSION**

In 1990, the Minnesota legislature enacted Minn.Stat. § 27.138, the "Wholesale Produce Dealers Act". It is clear from the language of the statute, that Minnesota modeled the WPDA after the Perishable Agricultural Commodities Act, 1930, as amended, 7 U.S.C.A. § 499a *et seq.* ("PACA"). PACA itself was modeled after the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. § 196, (1976) ("PSA"). *See* H.Rep. No. 98–543, 98th Cong., 1st Sess. 3, 4 (1983),

U.S.Code Cong. & Admin.News 1984, 406–7 *In re Monterey House, Inc.,* 71 B.R. 244, 246 (Bkrtcy.S.D.Tex.1986). The validity of the PSA and PACA trust provisions have been upheld for over 10 years. *In re Frosty Morn Meats, Inc.,* 7 B.R. 988, 1005 (M.D.Tenn. 1980); *In re Monterey House, Inc.,* 71 B.R. 244, 247 (Bkrtcy.S.D.Tex.1986); *In re Lombardo Fruit, Inc.,* 12 F.3d 806, 809 (8th Cir. 1993); *In re H.R. Hindle & Co., Inc.* 149 B.R. 775, 784 (Bkrtcy.E.D.Pa.1993). *See In re Fair,* 134 B.R. 672 (Bkrtcy.M.D.Fla.1991).

The United States Congress enacted PACA to protect small farmers and growers from "the sharp practices of financially irresponsible and unscrupulous brokers in perishable commodities" by providing that, in the event small farmers and growers are not paid for their produce, they are elevated to a priority position above that of all broker's secured creditors. *In re Lombardo Fruit and Produce Co.,* 12 F.3d 806, 808 (8th Cir. 1993), citing *Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777, 780 (8th Cir.1991), and *Chidsey v. Guerin,* 443 F.2d 584, 587 (6th Cir.1971).

In 1984, Congress amended PACA because sellers of fresh produce were unsecured creditors and thus had no protection in light of produce buyers' practice of granting lending institutions security interests in their accounts receivable. H.R.Rep. No. 543, 98th Cong., 2d Sess. 3 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 405,407, cited in *In re Lombardo Fruit,* at 808–9. Produce sellers' interests in the commodities were intentionally granted a **superior** position over the dealers' secured creditors. *Hull Co. v. Hauser's Food, Inc.,* 924 F2d 777, 780 (8th Cir.1991). "Legislative history supports Congress' intention to give these parties an almost unconditional priority." *In re H.R. Hindle & Co., Inc.,* 149 B.R. 775, 785 (Bkrtcy.E.D.Pa.1983).

Congress provided that sellers of perishable agricultural commodities were protected by a trust "until full payment of sums owing in connection with such transactions has been received by such unpaid suppliers [or] sellers ..." 7 U.S.C.A. § 499e(c)(2).

It must be remembered that PACA was not enacted to protect those in debtor's shoes, but rather to prevent the chaos and disruption in the flow of perishable agricultural commodities sure to result from an industry-wide proliferation of unpaid obligations. While in isolation this may seem a harsh course to follow, in the macroeconomic sense PACA serves to ensure continuity of payment and therefore survival of the industry.

*In re Fresh Approach, Inc.*, 51 B.R. 412, 420 (Bkrtcy.N.D.Tex.1985).

■ Pursuant to Minn.Stat. § 27.138, Country Club is a "wholesale produce dealer" and Dairy Fresh is an "unpaid seller". Country Club has to "maintain the trust assets in a manner that makes the trust assets freely available to satisfy the amounts owed to unpaid sellers and may not divert trust assets in a manner that impairs the ability of unpaid sellers to recover amounts due." *Id*, at Subd. 1(c). The Court finds that the plain language of the WPDA, as well as the Legislature's intent in enacting the WPDA, conclusively demonstrate that the WPDA was enacted to create a trust which protects Dairy Fresh in this case.

## A. MINN.STAT. § 27.138 CREATES TRUST, *NOT* STATUTORY LIEN

The trust elements established in the PACA amendments of 1984 and the Minnesota statute of 1990 are virtually identical. WPDA creates a trust, and not merely because of the usage of the words "trust" and "trustee".

**1. trust res.** The WPDA defines the trust res as "the produce and products of produce of a wholesale dealer and proceeds." Minn Stat. § 27.138, Subd. 1(a). The Regulations enacted with PACA's 1984 Amendments define the trust res as:

*Trust Assets.* The trust is made up of perishable agricultural commodities received in all transactions, in all inventory of food or other products derived from such perishable agricultural commodities, and all such receivables or proceeds from the sale of such commodities or food or products derived therefore. Trust assets are to be preserved as a nonsegregated

"floating" trust. Commingling of trust assets is contemplated.

7 C.F.R. § 46.46(c)

■ WPDA's trust fund is not a segregated fund created by a debtor, but is a nonsegregated floating trust which hovers over not only the perishable commodities, but products made from them, the accounts receivable and proceeds of them. *See In re Monterey House, Inc.*, 71 B.R. 244, 246 (Bkrtcy.S.D.Tex.1986).

**2. fiduciary duties.** Minn.Stat. § 27.138, Subsections (b) through (e) of Subdivision 1 clearly lists the wholesale produce dealers' fiduciary duties with respect to trust assets:

Subd. 1(b): "The trust assets are to be maintained as a nonsegregated floating trust."

Subd. 1(c) "The wholesale produce dealer must maintain the trust assets in a manner that makes the assets freely available to satisfy the amounts owed to unpaid sellers and may not divert trust assets in a manner that impairs the ability of unpaid sellers to recover amounts due";

Subd. 1(d) "... must maintain the trust assets in trust until payment has been made in full to unpaid sellers.";

Subd. 1(e) "... holds trust assets in trust for seller ..."

**3. beneficiaries.** The beneficiaries are clearly identified as being the unpaid sellers (Minn.Stat. § 27.138, Subd. 1(a)), who have vested and enforceable rights (Minn.Stat. § 27.138, Subd. 2). The statute creates an intentional fiduciary relationship with respect to property, using direct and express terms for a specific purpose.

Minnesota intentionally modeled the WPDA trust provisions after those in PACA, providing the same superior position for unpaid sellers. In 1993, the Eighth Circuit held that "PACA's trust provision has the precise effect Congress intended; namely, in the event the seller does not receive payment, *the seller is elevated to a priority position above that of all the buyer's secured creditors.*" *Lombardo Fruit*, at 809, (emphasis added). In a footnote, the *Lombardo*

Court stated that: "The creation of such protective mechanisms is hardly unusual. For instance, a mechanic's lien also allows a particular class of individuals (contractors and suppliers) to collect their money ahead of those with otherwise superior lien rights (mortgage companies)." *Id.* at 809.

"[The PACA trust] effectively provides its beneficiaries with a claim status that trumps that of all other creditors, even secured creditors." *In re H.R. Hindle & Co., Inc.,* 149 B.R. 775, 785 (Bkrtcy.E.D.Pa.1993). The same clear and unambiguous language of Minn.Stat § 27.138 establishes a trust for the benefit of unpaid sellers such as Dairy Fresh, and grants it the same superior position over other creditors of Country Club.

If the Minnesota Legislature intended to create a *lien* (such as awarded mechanics and others in Minn.Stat. § 514.01, et seq. or awarded landlords in Minn.Stat. 524.960), then it would have done so. Indeed, the words "trust" or "trust assets" appear at least thirty times in the WPDA. The language is not an accident nor sham.

The plain language of the regulations enacted by the Minnesota Commissioner of Agriculture to implement the WPDA also indicate an intent to create a trust. Consistent with the statute, the regulations use the terms "trust", "trust assets" and "beneficiaries". *See* Min.R. 1500.0100 *et seq.* The Court agrees with Appellant that it is difficult to imagine how the language could more clearly indicate the Legislature's intention to create a trust under the WPDA.

Arguments of the Appellee that the WPDA fails to meet the requirements of express and implied trusts, citing *Bush v. Crowther (In re Bush's Trust),* 249 Minn. 36, 81 N.W.2d 615 (1957) and Restatement (Second) of Trusts §§ 169–185 (1959) are unpersuasive. Minn. Stat. § 27.138 establishes a *statutory* trust for the benefit of Dairy Fresh, one that mirrors PACA.

Cases dealing with trusts purportedly created by contract are likewise unpersuasive. In the present case, the Court is not interpreting draftsman's language in lease or management agreements. The WPDA nonsegregated trust defines assets, anticipates commingling of assets (with no requirement of tracing), and grants priority over other claimants, encumbrances and liens.

This interpretation does not create a burden on other creditors of Country Club. As opposed to contractual or implied trusts, the statute is public. There was no secret agreement between the produce seller (Dairy Fresh) and the retail grocer (Country Club). As a matter of law, the WPDA creates a trust with Dairy Fresh as its beneficiary.

## B. TRUST FUND NOT PROPERTY OF BANKRUPTCY ESTATE

■ Assets subject to the WPDA are not property of the estate, and are subject to division outside the distribution scheme found in the bankruptcy law.

■ Courts have held that the PSA did not create a statutory lien invalid against the trustee in bankruptcy, but rather it provided for a statutory trust fund which was not an asset of the bankrupt's estate. *In re Frosty Meats, Inc.,* 7 B.R. 988, 1005 (M.D.Tenn. 1980), cited in *In re Monterey House, Inc.,* 71 B.R. 244, 247 (Bkrtcy.S.D.Tex.1986). PSA trust funds are excluded from the bankruptcy estate, *See In re Gotham Provision Co., Inc.,* 669 F.2d 1000 (5th Cir.1982). PACA unpaid suppliers have preference to proceeds of sales of those commodities apart from priorities established in Bankruptcy Code, and such preference extends to secured as well as unsecured creditors. *See In re H. R. Hindle & Co., Inc.,* 149 B.R. 775, 778 (Bkrtcy.E.D.Pa.1993).

Courts consistently hold that, "there is no dispute that when a party establishes an interest in a PACA trust, the trust proceeds are separate from a PACA trustee's bankruptcy estate." *In re San Joaquin Food Service, Inc.,* 958 F.2d 938, 939 (9th Cir. 1992). *See* "The corpus of a secured PACA trust is [just such] an equitable interest and is not to be considered property of the estate." *In re Super Spud, Inc.,* 77 B.R. 930 (Bkrtcy.M.D.Fla.1987), citing *In re Fresh Approach,* 51 B.R. 412, 419 (Bkrtcy.N.D.Tex. 1985). The trust status entitles the beneficiary to priority:

... the property held by the bankrupt in trust properly belongs to plaintiff, a trust beneficiary, and *never became part of the bankruptcy estate.* Since the property is outside the estate, the beneficiary is entitled to priority ahead of all other creditors and defeats the claim of the Trustee.

*In re Super Spud, Inc.,* at 931. (emphasis added).

The produce related assets (which are the property that make up the trust fund) by Debtor Country Club are not property of the estate.

The rule is elementary that the estate succeeds only to the title and rights in the property that the debtor possessed, although the trustee is armed, of course, with the special rights and powers conferred upon him by the Code itself. Therefore ..., the estate will generally hold such property subject to the outstanding interest of the beneficiaries. 4 *Collier on Bankruptcy,* 541.13 at 541–66 (15th ed. 1983), cited in *In re Fresh Approach, Inc.,* 51 B.R. 412, 419 (Bkrtcy.N.D.Tex.1985.)

The Court finds that Dairy Fresh, as a WPDA beneficiary, takes complete priority in payment as to all assets of the debtor, ahead of the claims of creditors who have valid security interests, ahead of the administrative costs and expenses incurred in this Court, and ahead of all other priority and general creditors. The statute expressly excludes trust assets from property of the estate, which creates a priority scheme consistent with that applied in cases of judicially imposed constructive trusts. Minn.Stat. § 27.138, sub. 4(1990).

## C. TRUST IS NOT AN AVOIDABLE PREFERENCE

■ Because this Court finds that the trust assets are not part of the bankruptcy estate, there was no preference which the trustee/appellee could avoid. Dairy Fresh need not perfect its interest in order to recover under the Bankruptcy Code. Rather, by duly filing its beneficiaries' notice according to Minn.Stat. § 27.185, sub. 3, Dairy Fresh complied with all conditions necessary to protect its trust assets. Further, because the Court finds that the trust fund is not

property of the debtor's estate, Dairy Fresh was not obligated to obtain a lift of stay before filing its beneficiaries' notice with the Minnesota Secretary of State.

■ Dairy Fresh does not have to perfect a "lien" as against current or future claim holders. Pursuant to the statute, Country Club's fiduciary duty requires it to maintain sufficient funds, commingled as they are with general revenues, to satisfy unpaid sellers *in full.* The burden is upon the wholesale produce dealer to ensure that trust assets are maintained. Satisfying that duty protects the beneficiary from "getting in line" behind good faith retail purchasers from Country Club, lenders or other creditors. Dairy Fresh's interest in the trust fund arose at the moment the produce was delivered, prior to the filing of the bankruptcy petition. This unpaid seller's rights *preceded* those of any bona fide purchaser from Country Club, and Dairy Fresh need not have perfected its interest according to the Code at the time of the commencement of the proceeding.

## CONCLUSION

As a matter of law, Minn.Stat. § 27.138 creates a valid statutory trust. The trust fund is not property of the debtor's estate. The trust is not a statutory lien within the meaning of 11 U.S.C. § 101(53) which can be avoided under 11 U.S.C. § 545(2).

Accordingly, IT IS HEREBY **ORDERED** THAT:

1. The Order for Summary Judgment of the bankruptcy court is reversed and this matter is **remanded** to the bankruptcy court for proceedings consistent with this Order.