**In re ARIZONA FAST FOODS, LLC., dba Whataburger, an Arizona limited liability company, Debtor.**

**Ringel Valuation Services, Inc. as Liquidating Trustee of Arizona Fast Foods, LLC Liquidating Trust, Plaintiff,**

**v.**

**Shamrock Foods Company, Defendant.**

**Bankruptcy No. 01–7912–PHX–SSC. Adversary No. 02–801.**

United States Bankruptcy Court, D. Arizona.

March 28, 2003.

Carolyn Johnson, Daniel Garrison, Gallagher, Kennedy, PA, Phoenix, AZ, for Plaintiff.

Frederick Petersen, Michael McGrath, Mesch, Clark & Rothschild, PC, Tucson, AZ, for Shamrock Foods Company.

## MEMORANDUM DECISION

SARAH SHARER CURLEY, Chief Judge.

## I. INTRODUCTION

This matter comes before the Court on the Defendant's November 14, 2002 Motion for Summary Judgment. The Plaintiff filed a Response to the Motion and also filed a Cross–Motion for Partial Summary Judgment on December 17, 2002 and December 16, 2002, respectively. The Defendant subsequently filed a Reply on January 17, 2003. The Plaintiff filed its Reply on January 28, 2003. On January 28, 2003, the Court held oral argument on both the Defendant's Motion for Summary Judgment and the Plaintiff's Motion for Partial Summary Judgment. At the conclusion of

the hearing, the Court preliminarily ruled in favor of the Plaintiff. The Court noted that it would set forth more detailed findings of fact and conclusions of law.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the *Rules of Bankruptcy Procedure.* The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2003).

## II. FACTUAL BACKGROUND

On June 18, 2001, the Debtor filed a voluntary petition for relief under Chapter 11[1]. Prior to the filing of the petition, Shamrock Foods Company, the Defendant ("Shamrock"), was a major supplier of food products used by the Debtor in its restaurants. On September 21, 2001,the Debtor, the Official Committee of Unsecured Creditors and Whataburger, Inc. ("Whataburger") filed a Joint Plan of Reorganization (the "Plan"). The Plan provided, at Article VII, ¶ 7.3, that the Liquidating Trustee would have the exclusive right to examine, and seek the collection of, any avoidance actions.

On October 9, 2001, Shamrock filed four proofs of claim: 1) a claim arising from the sale of perishable agricultural commodities to the Debtor (the "PACA Claim") for the sum of $286,786.00; 2) a claim based on its reclamation rights for delivery of goods to the Debtor within ten days prior to the filing of the Debtor's bankruptcy petition (the "Reclamation Claim") in the amount of $113,276.00; 3) a claim arising from a secured promissory note executed on February 6, 2001 (the "Secured Claim") in the amount of $632,084.96; and 4) an unsecured claim in the amount of $1,392,101.82.

---

**1.** All references are to the Bankruptcy Reform Act of 1978, as amended, unless otherwise noted.

On November 9, 2001, Shamrock moved this Court to approve a Stipulation entered into by Shamrock, the Debtor, and Whataburger, Inc. for the allowance of its PACA Claim in the amount of $286,786.00, its Reclamation Claim in the amount of $113,276.00 and its Secured Claim in the amount of $326,879.00. Shamrock's motion was supported by the Stipulation for the allowance of these claims entered into by Shamrock, the Debtor, and Whataburger, Inc.[2]

Pursuant to the Stipulation, the parties agreed that Shamrock's PACA Claim would be allowed in the amount of $286,786.00.[3] The parties agreed that the treatment and payment of Shamrock's PACA Claim would be as set forth in the Plan of Reorganization. Pursuant to the terms of the Stipulation, the parties agreed that Shamrock's Reclamation Claim would be allowed in the amount of $113,276.00;[4] and the treatment and payment of this claim would be in accord with the payment of the administrative claims as set forth in the Plan.[5] Next, Shamrock's Secured Claim, originally in the amount of $607,774.00, would be allowed in the amount of $326,879.00;[6] and the payment of this secured claim would be made in accordance with the Plan and by separate agreement for repayment by Whataburger.[7] By separate agreement, Whataburger was to execute a promissory note in favor of Shamrock in the amount of $326,897.00 and repay Shamrock's Secured Claim over a period of 24 months, with interest at a variable rate.[8] Finally, the parties agreed that the remainder of Shamrock's Secured Claim, or the deficiency claim, would be considered part of its unsecured claim.[9]

On November 16, 2001, the Court entered two Orders: one confirming the Plan, and the other approving the Stipulation entered into by Shamrock, the Debtor, and Whataburger. Whataburger subsequently paid Shamrock's PACA claim, the Reclamation claim, and is making payments on the Secured claim.

On April 3, 2002, the Liquidating Trustee and Whataburger objected to Shamrock's unsecured claim, left unresolved by the Stipulation. The parties objected on various grounds, including the possibility that a potential offset could exist due to alleged preferential payments made by the Debtor to Shamrock in the 90 days prior to the petition date.

On July 3, 2002, the Plaintiff, the Liquidating Trustee, filed an adversary complaint against Shamrock alleging that within the 90 days prior to the filing of the Debtor's bankruptcy petition, Shamrock received a voidable preference in the net amount of $502,073.95. Subsequently, the Court consolidated the April 3, 2002 objection with this adversary.

## III. DISCUSSION

### A. *THE STANDARD FOR SUMMARY JUDGEMENT*

A motion for summary judgment should be granted if the movant has shown that

---

2. Whataburger, Inc., through a sale mechanism, funded the Joint Plan of Reorganization. Hence, Whataburger and the Debtor were critical parties to any resolution of the claims.

3. Docket Entry No. 201 (Exhibit A) at paragraph 8.

4. *Id.* at paragraph 9.

5. *Id.*

6. *Id.* at paragraph 10.

7. *Id.*

8. *Id.*

9. *Id.*

there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056(c). Ruling on a motion for summary judgment necessarily implicates that substantive evidentiary standard of proof which would apply at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 at 252, 106 S.Ct. 2505 at 2512, 91 L.Ed.2d 202 (1986). A material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Id.* Procedurally, "the proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *In re Aquaslide 'N' Dive Corp.,* 85 B.R. 545, 547 (9th Cir.BAP1987). Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute." *Frederick S. Wyle P.C. v. Texaco, Inc.,* 764 F.2d 604, 608 (9th Cir.1985). The opponent may not assert the existence of some alleged factual dispute between the parties. *Liberty Lobby,* 477 U.S. 242 at 252, 106 S.Ct. 2505 at 2512, 91 L.Ed.2d 202 Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge, and the facts set forth therein must be admissible in evidence. *Aquaslide,* at 547. In addition, summary judgment must be used with care and restraint, *Hutchinson v. United States,* 677 F.2d 1322, 1325 (9th Cir.1982), and is reviewed in the light most favorable to the non-moving party. *Hifai v. Shell Oil Co.,* 704 F.2d 1425, 1428 (9th Cir.1983).

## B. *THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Shamrock argues that the Complaint should be dismissed because the Plan proponents failed to preserve any of the avoidance claims prior to the confirmation of the Plan. Specifically, Shamrock argues that the Liquidating Trustee is barred from asserting any avoidance actions because the Plan proponents failed to disclose adequately the preference action in the Plan, the Disclosure Statement, or the Order of Confirmation. According to Shamrock, the confirmed Plan and the Stipulation operated as *res judicata* to bar the preference action against Shamrock. Furthermore, Shamrock alleges that the Liquidating Trustee is equitably and judicially estopped from asserting any avoidance claims based on the payment of Shamrock's PACA, Secured, and Reclamation claim because it had a duty to disclose the possibility of its preference action and failed to do so.

 When a debtor or other proponent proposes a plan, the proponent must provide a disclosure statement to creditors containing adequate information about the proponent, the debtor and the plan. Pursuant to 11 U.S.C. § 1125 "adequate information" is information as "far as reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records." Adequate information will be determined by the facts and circumstances of each case. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3rd Cir.1988). A debtor or plan proponent who inadequately discloses causes of actions in a bankruptcy will be later barred from prosecuting that cause of action. *Hamilton v. State Farm Fire and Casualty Co.,* 270 F.3d 778 (9th Cir.2001); *Kelley v. South Bay Bank (In re Kelley),* 199 B.R. 698, 704 (9th Cir. BAP 1996); *In re Heritage Hotel Partnership I,* 160 B.R. 374 (9th Cir. BAP 1993), aff'd mem., 59 F.3d 175 (9th Cir. 1995). However, it is impractical and unnecessary to expect that a disclosure statement and plan must list each and every possible defendant and each and every

possible theory. *In re Associated Vintage Group, Inc.,* 283 B.R. 549 (9th Cir. BAP 2002). Any doubts are resolved against preclusion of the action. *Id.*

 It is clear that the Plan, Disclosure Statement, and Order of Confirmation provided more than "adequate information" about the possibility that Shamrock, and other creditors, were susceptible to avoidance actions post-confirmation. All creditors knew that the Plan and Disclosure Statement were proposed on September 21, 2001, shortly after the case was filed on June 18, 2001. The Plan made several references to avoidance actions, and the Liquidating Trustee's duty to pursue such actions. For example, ¶ 1.2.4 defined "Avoidance Actions" as "*any* and *all* actions which the Liquidating Trustee may assert on behalf of the Estate ...,including but not limited to actions under one or more provisions of sections ... 547..." [10] Paragraph 9.3 defined the Liquidating Trustee's Responsibilities as including the "investigation, analysis, prosecution, and if necessary, and appropriate, compromise of the Claims and causes of action included among [sic] the Liquidating Trust, including without limitation, Avoidance Actions and non-bankruptcy causes of action against third parties." [11] Paragraph 7.3 stated the procedure as to Avoidance Actions, noting that they would be commenced within six months of the Effective Date or be barred. [12] Paragraph 15.3 specifically provided for the Retention of Actions and Defenses stating in part: "All Claims, rights, defenses, offsets, recoupments, causes of action, actions in equity,

or otherwise ...(including without limitation Avoidance Actions) shall be and hereby are preserved for the benefit of the holders of beneficial interests in the Liquidating Pool ..." [13]

More importantly, none of the language in any of the documents provided a specific release or waiver of potential preference claims against Shamrock. For example, the terms of the Stipulation only set forth the allowable amount of the PACA, Reclamation, and Secured Claim, but fail to include any release language. The provisions setting forth the "Exculpated Persons" listed the Debtor, Whataburger, and the Committee but failed to list Shamrock [14]. Language in the Disclosure Statement Supplement and its Amendment made it clear that "no other provision of the Plan or disclosure statement shall release the claims of third parties or the Estate or Liquidating Trustee against non-debtor third parties." [15]

Similarly, paragraph H of the Confirmation Order provided: "Nothing herein or in the Plan shall release the claims of third parties, the Estate, or the Liquidating Trust Estate or Liquidating Trustee against non-Debtor third parties...." [16] Based upon the representations made in open court at the time of confirmation, the Court specifically interlineated on the Order of Confirmation: "The parties have represented that there currently are no net proceeds of the Avoidance Actions ...in existence at the time of the Confirmation Order." [17] If a disclosure statement and/or plan of reorganization

10. Docket Entry No. 150.

11. *Id.*

12. *Id.*

13. *Id.*

14. *See Id.* § 1.2.33.

15. *See* Disclosure Statement Supplement and its Amendment, Page 7, paragraph 9(a).

16. Docket Entry No. 214 at 7.

17. *Id.* at 11.

expressly reserves an action for later adjudication, the doctrine of *res judicata* does not apply. *Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698, 704 (9th Cir. BAP 1996); *Peltz v. Worldnet Corp. (In re USN Communications, Inc.)*, 280 B.R. 573 (Bankr.D.Del.2002). In this case the Plan and Disclosure Statement expressly reserved the Trustee's right to pursue avoidance actions. Given the posture of this case, the language in the pleadings was sufficient to put creditors on notice that preference claims might exist. However, because of the "fast-track" nature of the confirmation process, agreed to by the creditors, including Shamrock, a detailed analysis of the nature and value of the avoidance actions had yet to be conducted at the time of confirmation. In many of the large chapter 11 cases, the plan of reorganization is often confirmed before the debtor and/or a trustee has undertaken a detailed investigation of the potential preference actions. *Peltz v. Worldnet Corp. (In re USN Communications, Inc.)* 280 B.R. 573 (Bankr.D.Del.2002). Nonetheless, Shamrock was involved early on in this case and was a sophisticated party who knew it had received payments from the Debtor within the 90–day period, putting it on notice that avoidance actions might be subsequently brought.

Shamrock's recognition of its importance in this case may be ascertained from one of its own pleadings. In attempting to persuade this Court that the settlement between Whataburger and Shamrock should be approved, since Whataburger would be paying the PACA, Reclamation, and Secured Claims from nonstate assets, Shamrock stated "All creditors have already been put on notice that Shamrock and Whataburger would enter into negotiations to determine the allowed amount of

Shamrock's claims. No objection or comment has been filed to the proposed Plan of Reorganization ...[since] Shamrock and Whataburger entered these negotiations. Shamrock is a significant creditor in this case and resolution of its claims is essential to confirming any plan of reorganization.... With this Stipulation, all parties are now on notice of the amounts of Shamrock's claims." [18]

The Court concludes that the Plan Proponents did adequately disclose and preserve potential avoidance actions. Moreover, since none of the pleadings, including the Stipulation with Shamrock, provided for a release, or waiver of rights, the Court does not see a basis for holding that the claims are barred by *res judicata* and should be dismissed. Accordingly, the Defendant's Motion for Summary Judgment is Denied.

### C. *THE PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT*

■ In its Cross–Motion for Partial Summary Judgment, the Plaintiff seeks a finding that Shamrock is not entitled to assert that the transactions predicating its PACA and Reclamation claims constitute "new value" for the purposes of analyzing its liability for preferential transfers. 11 U.S.C. 547 permits a trustee to challenge every transfer made to a creditor prepetition to allow the trustee to secure equality of distribution among the unsecured creditors by preventing a debtor from benefitting a particular creditor on the eve of bankruptcy. *In re IRFM, Inc.* 52 F.3d 228 (9th Cir.1995). If a preference is shown, the creditor may establish a defense of new value. The new value defense encourages creditors to continue to conduct business with financially troubled

18. Docket Entry No. 201 at 4.

debtors, with an eye toward avoiding bankruptcy altogether. *Id.* at 232. Subsequent advances of new value may be used to offset prior (although not immediately prior) preferences. A creditor is permitted to carry forward preferences until they are exhausted by subsequent advances of new value. *Id.* A creditor is entitled to shield the preferential transfers only where "new value" replenishes the estate for the diminution caused by the transfer. If new value has been repaid, and that repayment can itself be avoided, the prior preferential transfers are shielded. However, where the repayment of the new value is unavoidable, the new value does not replenish the estate for prior preferential transfers, and those preferences may be avoided.

According to the Plaintiff, the transactions predicating the PACA and Reclamation claims did not replenish the estate. However, this analysis does not fully explore the complex transactions between the Debtor and Shamrock. The difficulty is that Shamrock has been receiving payments, pre-petition and post-petition, on a number of claims. Moreover, pursuant to the Stipulation entered into by the Debtor, Shamrock, and Whataburger, the PACA and Reclamation claims were allowed in their full amount.

■ The Courts have universally recognized that any property held by a debtor in a statutory PACA Trust is excluded from the bankruptcy estate. *In re San Joaquin Food Service, Inc.,* 958 F.2d 938, 939 (9th Cir.1992); *In re Churchfield,* 277 B.R. 769 (Bankr.E.D.Cal.2002). It is well established that the Code requires a transfer "of an interest of the debtor in property" before a preference action may be maintained. *In re Fresh Approach,* 51 B.R. 412, 423 (Bankr.N.D.Tex.1985). Since PACA trust funds are not property of the estate, and the debtor never obtains a beneficial interest in the produce sold to it, PACA trust fund creditor has an otherwise unanticipated preference defense. *In re Fresh Approach,* 51 B.R. 412, 419 (Bankr.N.D.Tex.1985); Cf.*In re Country Club Market, Inc.* 175 B.R. 1005, 1010 (D.Minn.1994).

■ As to the PACA claim in this case, the Debtor purchased certain produce from Shamrock pre-petition which would be classified within the purview of the Perishable Agricultural Commodities Act, as amended. As the Debtor received payments for the produce, it was required to hold the funds in trust for Shamrock. These funds never became property of the bankruptcy estate, and the Debtor, or the Liquidating Trustee, as the Debtor's successor, was required to turn these funds over to Shamrock. This has happened. However, since these trust funds have no effect on the bankruptcy estate (they never became part of the estate), they cannot be used by the Liquidating Trustee or Shamrock in any preference analysis.

As noted previously, Shamrock was shipping goods pre-petition to the Debtor; some constituting PACA produce, some subject to reclamation and claims, some not. Shamrock was also receiving payments on these various shipped goods. Let us assume the Debtor and Shamrock engaged in the following transactions pre-petition:

| | Checks to Shamrock | Goods Shipped |
| --- | --- | --- |
| Day 89 | Shamrock paid $50 on non-PACA claim | *PACA Goods* worth $100 shipped. (Not part Of estate.) |
| Day 50 | Shamrock paid $100 on *PACA* goods (Not part of estate.) | Shamrock ships $25 of non-PACA goods. |
| Day 5 | Shamrock paid $25 on non-PACA goods. | Shamrock ships reclamation goods with $100 value. |

■ The PACA claims, for the reasons stated above, must be excluded in considering whether Shamrock has a "new value"

defense. Moreover, Shamrock was paid in full by Stipulation on its reclamation claim, so the "new value" has become unavoidable, as defined in the *IRFM* decision, and does not replenish the estate to protect earlier transactions from constituting preferences. As a result, the remaining transactions are still subject to review in a preference analysis:

| Day 89 | Shamrock paid $50 on non-PACA claims | |
| Day 50 | | Shamrock ships $25 of non-PACA goods |

Under these facts, Shamrock has received a preference of $25. Therefore, the Liquidating Trustee, the Plaintiff, is correct that there are remaining transactions concerning the payment of the non-PACA goods with non-PACA funds that must be reviewed. It is also correct that any reclamation goods shipped pre-petition, which have now been paid in full, may not be used as a part of the "new value" defense. The Court will, therefore, limit the evidence that Shamrock may present as a part of its new value defense, and the Plaintiff's Motion for Partial Summary Judgment shall be granted.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the Defendant's Motion for Summary Judgment is DENIED. However, the Plaintiff's Cross-Motion for Summary Judgment is GRANTED.

The Court will execute a separate order incorporating this Memorandum Decision.