**In re COUNTRY CLUB MARKET, INC., Debtor.**

**DAIRY FRESH FOODS, INC., Plaintiff,**

v.

**James E. RAMETTE, Trustee, Defendant.**

**Bankruptcy No. 4–91–5834.**
**Adv. No. 4–93–123.**

United States Bankruptcy Court, D. Minnesota.

Dec. 5, 1994.

Clinton E. Cutler, Fredrikson & Byron, Minneapolis, MN, for plaintiff.

Randall L. Seaver, Morris, Fuller & Seaver, Minneapolis, MN, for defendant.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

ROBERT J. KRESSEL, Bankruptcy Judge.

This adversary proceeding came on for hearing on September 1, 1993, on the parties' cross-motions for summary judgment. Clinton E. Cutler appeared for the plaintiff. Randall L. Seaver appeared for the defendant. I granted the defendant summary judgment on December 29, 1993. *Dairy Fresh Foods, Inc. v. Ramette (In re Country Club Market, Inc.)* 162 B.R. 226 (Bankr. D.Minn.1993). The plaintiff appealed to the district court. On June 27, 1994, the district

court (Magnuson, J.) reversed and remanded the proceeding to bankruptcy court for proceedings consistent with its order. *Dairy Fresh Foods, Inc. v. Ramette (In re Club Market, Inc.)*, 175 B.R. 1005 (D.Minn.1994). This court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and Local Rule 201. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K).

## FACTS

On August 26, 1991, the debtor, Country Club Market, Inc., filed a Chapter 11 bankruptcy petition. Both prior to and during the Chapter 11 case, the debtor owned and operated several supermarkets in the Minneapolis–Saint Paul metropolitan area. In this capacity, the debtor purchased wholesale quantities of food products to resell on the retail market. The plaintiff, Dairy Fresh Foods, Inc., is a wholesaler who regularly sold dairy and food products to the debtor, including juices, fruit-flavored drinks, and punch. Between August 10 and August 31, 1991, the debtor received goods from the plaintiff for which payment had not been made at the time of filing. During this period, the debtor was also billed for deposits and credited for the return of the bottles, pallets, and cases used to ship the products. The debtor's net account to the plaintiff totaled $186,895.94.

On September 26, 1991, pursuant to Minn. Stat. § 27.138,[1] the plaintiff filed a beneficiaries notice of intent to preserve trust assets for the amount owed. Subsequently, the debtor paid the plaintiff $17,152.00 in settlement of the plaintiff's reclamation claim under 11 U.S.C. § 546(c) and Minn.Stat. § 336.2–702. The debtor converted the case to a Chapter 7 case on December 17, 1992. The defendant, James E. Ramette, was appointed as trustee.

The plaintiff commenced this adversary proceeding under Minn.Stat. § 27.138 of the WPDA seeking judgment in the amount of $169,743.94 plus prejudgment interest.[2] The

plaintiff argued that Minn.Stat. § 27.138 created a trust for the benefit of unpaid sellers such as the plaintiff and that, as such, the proceeds of the trust are not part of the debtor's estate and should be turned over by the trustee to the plaintiff. The plaintiff also argued that, as a trust, its claim is not avoidable by the trustee under 11 U.S.C. § 545. In addition, the plaintiff also maintained that the trustee had no standing to assert that the WPDA is unconstitutional.

The defendant argued that the trust was in reality a statutory lien avoidable under 11 U.S.C. § 545 and that the WPDA is preempted by the federal statutory scheme promulgated by Perishable Agricultural Commodities Act under 7 U.S.C. § 499e(c). In addition, the defendant asserted that the WPDA is an unconstitutional impairment of contractual rights and due process rights under both the Federal and State Constitutions. The defendant also argued that the amount requested by the plaintiff is a factual issue to be determined at trial and denied that the plaintiff is entitled to prejudgment interest. Finally, the defendant counterclaimed for $825.00 allegedly spent for postpetition advertising.

In my original order, I had granted summary judgment for the defendant, concluding that the so-called trust was a statutory lien avoidable by the trustee. As a result, I did not address any of the other issues raised by the motions. The district court reversed that order and remanded. Thus, I must now address the parties' remaining arguments.

## SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

---

**1.** The Minnesota Wholesale Produce Dealers Act.

**2.** The issue of prejudgment interest was not raised in the plaintiff's complaint. In its motion

papers and on remand, however, it requests prejudgment interest.

56(c).[3] "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### A. *The Burdens*

#### 1. *The Moving Party*

Initially, the burden is on the party seeking summary judgment. It is the moving party's job to inform the court of the basis for the motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 324, 106 S.Ct. at 2553. Simply stated, the moving party must show the court that there is an absence of evidence to substantiate the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554. To that end, the movant discharges its burden by asserting that the record does not contain a triable issue and identifying that part of the record which supports the moving party's assertion. *See id.* at 323, 106 S.Ct. at 2552; *City of Mt. Pleasant, Iowa v. Associated Electric Cooperative,* 838 F.2d 268, 273 (8th Cir.1988).

#### 2. *The Non-moving Party*

Once the movant has made its showing, the burden of production shifts to the non-moving party. The non-moving party must "go beyond the pleadings and by [its] ... own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' " establish that there is specific and genuine issues of material fact warranting a trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). The non-moving party cannot cast some metaphysical doubt on the moving party's assertion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party must present specific significant probative evidence supporting its case, *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990) sufficient enough "to require a ... judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). Any affidavits must "be made on *personal* knowledge, must set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein." Fed. R.Civ.P. 56(e) (emphasis added). If, however, the evidence tendered is "merely colorable," or is "not significantly probative," the non-moving party has not carried its burden and the court must grant summary judgment to the moving party. *Id.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

## DISCUSSION

### I. Constitutional Arguments

#### A. *Preemption of the WPDA*

 Preemption can be either express or implied. I find the statutory scheme of PACA embodies neither form of preemption with respect to the WPDA.

#### 1. *Express Preemption*

The scope of PACA is defined by 7 U.S.C. § 499*o.* Congress intended that, with respect to PACA, state statutes would "remain in full force and effect except insofar only as they are inconsistent herewith or repugnant hereto." *Id.* In other words, Congress did not intend that the federal body expressly preempt state legislation.

#### 2. *Implied Preemption*

The United States Supreme Court has stated:

Absent explicit pre-emption language, [the Supreme Court has] recognized at

---

**3.** Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, "Rule 56 Fed.R.Civ.P. applies in adversary proceeding[s]." *See* Fed. R.Bankr.P. 7056.

least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is so persuasive as to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Gade v. National Solid Wastes Management Ass'n,* —— U.S. ——, ——, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992) (citations omitted).

### a. Field Pre-emption

■ While the goals of the WPDA and PACA are very similar, the WPDA has a larger scope of coverage. The WPDA seeks to hold in trust the produce and products of produce of a wholesale produce dealer and proceeds for the benefit of unpaid sellers. *See* Minn.Stat. § 27.138, subd. 1. Such items include dairy products, poultry, fruits and vegetables, and products made from these items. *Id.* § 27.137, subd. 6. PACA mandates that perishable agricultural commodities received by a commission merchant, dealer or broker and any receivables from the sale of such commodities or products shall be held in trust for the benefit of all unpaid suppliers or sellers in the transaction. *See* 7 U.S.C. § 499o. While perishables include fresh fruits and fresh vegetables only, there is no language to suggest either that Congress intended that only perishable fruits and vegetables receive this type of protection or that sellers of perishables receive the protection of only the federal statute. *Id.* § 499a(b)(4)(A). Preemption is a question of federal intent and, where Congress has not sought to occupy the field alone, courts must sustain local regulations unless there is conflict with the federal scheme. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208–09, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985). Because Congress has evidenced no intent to occupy the field, the WPDA is complementary to PACA and there is no field pre-emption.

### b. Conflict Preemption

■ Conflict preemption will arise only where there is an impossibility of compliance with both the federal and state law or where the state law stands as an obstacle to the purposes and objectives of Congress. Neither of these situations applies to the WPDA and, as a result, there is no conflict preemption.

With respect to this case, the goals of PACA are to remedy the burden on commerce in perishable agricultural commodities and to protect the public interest. *See* 7 U.S.C. § 499e(c)(1). The mechanism used to accomplish this goal is to impose a trust for the benefit of unpaid suppliers or sellers on the perishable agricultural commodities as well as the proceeds and receivables from such sales by a commission merchant. *Id.* § 499e(c)(2). To preserve the trust, the unpaid supplier or seller must give written notice of intent to preserve the trust benefits to the merchant. Such notice must be filed with the Secretary within thirty days after either the Secretary indicates, a payment was to be made as agreed by the parties in writing or the payment instrument presented by the merchant was dishonored. *Id.* § 499e(c)(3).

Although the procedures for compliance with the WPDA are stated with more specificity, they closely follow the procedures of PACA. Produce, products of produce and proceeds are held in trust by the merchant for the benefit of the unpaid seller. *See* Minn.Stat. § 27.138 subd. 1. To maintain the WPDA trust, a written beneficiaries notice must be provided to the merchant, the commissioner and the appropriate filling office within forty days after the due date for payment or the date the payment instrument for the produce was dishonored. *Id.* §§ 27.138 subd. 2–3.

The WPDA poses no barrier to compliance with PACA. It is not impossible to comply because a seller of produce can file for protection under one or both of these statutory schemes without compromising the other. Likewise, the statutory scheme of the WPDA does not stand as an obstacle in the way of Congress accomplishing its full purposes and objectives. Congress set out to protect the

sellers of perishable agricultural goods and PACA continues to accomplish this goal, with or without the aid of the WPDA.

Because compliance with both federal and state regulations is not an impossibility and state law is not an obstacle to the meeting Congress' goals in enacting PACA, there is no conflict preemption between WPDA and PACA. *See Gade,* —— U.S. at ——, 112 S.Ct. at 2383.

### B. *Impairment of Contracts and Due Process*

■ The trustee maintains that the application of the WPDA in this case impairs the rights of creditors who were in existence prior to the creation of the statutory trust and deprives them of their due process rights.

■ The trustee lacks standing to assert a claim of impairment of contracts because, except as explicitly provided by the Bankruptcy Code (*e.g.* 11 U.S.C. § 544), the trustee stands in the shoes of the debtor, not creditors, and can only assume control of the debtor's estate. *See* 11 U.S.C. § 541. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). In a situation analogous to this one, the Eighth Circuit has indicated that where "applicable state law makes such obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate ... that are enforceable by the trustee...." *See In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222, 1224–25 (8th Cir.1987) (discussing the trustee's inability to bring a cause of action to pierce the corporate veil).

The constitutional rights that the trustee tries to assert are personal rights of individual creditors that cannot be asserted by a third party such as the trustee. In addition, the trustee has proffered no evidence to establish the existence of creditors whose rights were impaired by the WPDA statutory trust.

### II. Prejudgment Interest

■ Despite failing to make a request in the complaint, the plaintiff now asks for prejudgment interest. The defendant argues that because of its failure to request prejudgment interest in its complaint, the plaintiff is now barred from doing so. The Federal Rules of Civil Procedure indicate that "leave [to amend] shall be freely given when justice so requires." *See* Fed.R.Civ.P. 15(a).[4] The Eighth Circuit has determined that liberal amendment shall be allowed even after the defendant has served the moving party with a motion for summary judgment. *See Chesnut v. St. Louis County, Mo.,* 656 F.2d 343, 349 (8th Cir.1981) (allowing amendment of complaint despite a three-year delay from the initial filing). In this spirit, I am allowing the plaintiff to request prejudgment interest.

■ The authority cited for the request of prejudgment interest is Minn.Stat. § 549.09 subd. 1. The statutory provision allows for a grant of "preverdict, preaward or prereport" interest on verdicts, awards and judgments. *Id.*

The thrust of Dairy Fresh's complaint is that the defendant is in possession of the plaintiff's property which it wants the defendant to turn over. Dairy Fresh is not claiming that the defendant owes it money. In fact, the district court has explicitly held for the plaintiff on this issue, specifically rejecting the defendant's argument and my holding that there was a debt secured by a statutory lien. Because the plaintiff does not request a judgment or award for the recovery of money, the statute is not applicable.[5]

### III. WPDA Trust Amount

■ The Minnesota Legislature intended that the WPDA would protect the perishable agricultural products industry in this state and that the provisions of the WPDA would

---

4. Pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure, Rule 15 of the Federal Rules of Civil Procedure applies in adversary proceedings.

5. To the extent that it is ultimately determined that the trustee is holding trust property it may well be that the plaintiff is entitled to any interest actually earned by its property.

be liberally construed to achieve these ends. *See* Minn.Stat. § 27.001. The trust held by Country Club Markets for Dairy Fresh contained proceeds from the sale of various products, including juices, punch, fruit flavored drinks and dairy products, including, but not limited to, milk, cream, cottage cheese, whip cream, sour cream and dips. Also found in this accounting were charges for deposits and credits for pallets, bottles and cases. While the district court states in dictum that this sum is $169,743.94, this amount is still in dispute and has never been judicially determined.

Not all of the debt owed by the debtor to the plaintiff is necessarily covered by trust assets. The WPDA provides that "produce and products of produce of a wholesale produce dealer and proceeds are held in trust for the benefit of unpaid sellers." Minn.Stat. § 27.138, subd. 1. The Minnesota Legislature has indicated that only "produce and products of produce of a wholesale produce dealer and proceeds are held in trust for the benefit of unpaid sellers." *Id.* § 27.138, subd. 1. By definition, a "wholesale produce dealer" is a person "who buys or contracts to buy produce in wholesale lots for resale" or a person "engaged in the business of a cannery, food manufacturer, or food processor, who purchases produce in wholesale lots as part of that business." *Id.* § 27.01, subd. (1) & (4). Produce means "perishable fruits and vegetables, milk and cream and products manufactured from milk and cream, and poultry and poultry products." *Id.* § 27.137, subd. 6. In addition, products of produce means "products derived from produce through manufacturing, processing, or packaging." *Id.* § 27.137, subd. 7.

■ Although the WPDA is liberally construed to protect the perishable agricultural products industry, this protection is not without limitation. Logically, such limitations must be in place to prevent distortion of the legislature's purpose—to protect the producers and sellers of perishable agricultural commodities who cannot repossess their products in the case of a default. *See* Minn. Stat. § 27.001. This goal is warped if coverage extends to all products derived from perishable products because such coverage would extend, with the exception of meat products, to all products in stores, including, presumably, canned goods which literally are manufactured from fresh vegetables or fruits. The "line" can be drawn where a product has lost its perishability through manufacturing, processing or packaging because the seller could potentially repossess these items at any time without worrying about degradation of the asset.

To determine what portion of the trust is protected by the WPDA, each proposed item must be evaluated in light of the Act. Specifically, the statute must protect the unpaid sellers of produce and products from produce. *See id.* § 27.137, subd. 6. The dairy products sold by Dairy Fresh obviously fall within the scope of the WPDA trust because the definition of produce expressly includes milk and cream and products manufactured from milk and cream. *Id.* A more difficult question is whether proceeds from the sale of juices, punch and fruit flavored drinks are covered by the trust.

The stated purpose of the statute is to protect the sellers of "perishable" produce. *See* Minn.Stat. §§ 27.001, & 27.137 subd. 6. To achieve this end, the trust can protect proceeds from the sale of either produce or products of produce. *Id.* § 27.138 subd. 1. Relevant to our facts, the legislature anticipated the plaintiff's situation by defining "products of produce" to include "products derived from produce through manufacturing, processing, or packaging." *Id.* § 27.137 subd. 7. In other words, a trust could cover proceeds from the sale of produce or the sale of products derived from the manufacturing, processing or packaging of produce.

■ As a result, the WPDA would protect the proceeds of the sale only if the products of produce retained some perishable quality. Despite reconstitution and repackaging, some fruit juices are still perishable goods. Other packaging techniques can result in a nonperishable fruit juice product. The issue of whether the proceeds from these items are covered by the trust is one for trial. In addition, whether the scope of the WPDA extends to cover punch or fruit flavored drinks is also an issue for trial.

As to the plaintiff's right to deposits on pallets, bottles and cases, just as the trust would not protect proceeds of sales not covered by the Act, it would not protect a debt owed by the debtor for deposits. The actual amount in trust, therefore, is a factual issue which needs to be resolved at trial.

## IV. Trustee's Counterclaim

No evidence has been presented regarding the Trustee's counterclaim for funds allegedly spent on postpetition advertising. As a result, the resolution of this issue will also have to await trial.

## V. Conclusion

I hold that the WPDA is not preempted by PACA. In addition, the trustee neither has standing nor a basis to assert claims for the impairment of contracts or due process rights for third parties. The plaintiff has shown no basis for its claim to prejudgment interest.

There are two remaining issues for trial. First, the extent of the plaintiff's trust must be determined, but only to the extent that trust may or may not cover fruit juices, punch and fruit flavored drinks, or deposits. Finally, a determination must be made as to the propriety of the defendant's counterclaim of $825.00 for post-petition advertising.

THEREFORE IT IS ORDERED:

1. The plaintiff's motion for summary judgment is denied.

2. The defendant's motion for summary judgment is denied.