In re VEG LIQUIDATION, INC.
f/k/a Allens, Inc. and All
Veg, LLC, Debtors.

Allens, Inc. and All Veg, LLC

v.

H.C. Schmieding Produce Co., Inc.

No. 5:13–bk–73597.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Signed Aug. 20, 2014.

Jason Klinowski and Elizabeth Janczak, Chicago, IL, for the Debtor.

Greg Brown and Stanley Bond, Fayetteville, AR, for H.C. Schmieding Produce Co., Inc.

## Objection to PACA Claim
## ORDER

BEN BARRY, Bankruptcy Judge.

Before the Court are the *Debtor's Omnibus Objection to PACA Claims* filed on January 13, 2014 [doc. 417], and H.C. Schmieding Produce Co., Inc.'s response to the debtor's objection to PACA claims filed on February 3, 2014 [doc. 534]. The Court heard the objection and response on May 20, 2014, and at the conclusion of the hearing gave the parties until June 5, 2014, to file post-trial briefs. For the reasons stated below, the Court sustains the debtor's objection to Schmieding's proof of claim for PACA trust protection for $9247.34, sustains in part the debtor's objection to the interest rate charged by Schmieding and its objection to Invoice 104625, and overrules the debtor's remaining objections.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

### Introduction

The debtor initially raised six objections to the claim of H.C. Schmieding Produce Co. Inc. [Schmieding] but withdrew two of its objections—both related to attorney fees—at the beginning of the May 20 hearing. The remaining four objections were that (1) Schmieding was not entitled to PACA trust protection for $9247.34 of its claim based on Schmieding's own admission; (2) Schmieding charged an interest rate in excess of the maximum allowed rate of interest in Arkansas; (3) Schmieding charged a secret profit and may have breached its fiduciary duty as an agent by marking up freight charges and charging for other non-produce items; and (4) the debtor's own books and records reflect an amount owing to Schmieding less than what Schmieding alleges is owed. Schmieding responded by arguing that (1) Schmieding's filed PACA claim did not include the $9247.34 referenced by the debtor and Schmieding is not seeking PACA trust protection for those invoices; (2) the federal PACA statute preempts state law concerning the rate of interest charged; (3) the debtor is misreading the statute and the United States Department of Agriculture [USDA] regulations in its interpretation of "contemplated expenses," plus there was no agency relationship between the parties and the debtor approved the freight charges prior to any deliveries; and (4) the debtor has provided no support for its claim that Schmieding is owed less than Schmieding billed.

The parties do not dispute that Schmieding is entitled to protection under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a et seq. [PACA]. The goods in question were perishable agricultural commodities (carrots and potatoes) that were received by a commissioned merchant, dealer, or broker (the debtor), and Schmieding provided the debtor with proper and timely notice of its intent to make a claim under the PACA trust. *See Cox v. Decas Cranberry Prods., Inc. (In re Meyer's Bakeries, Inc.)*, 402 B.R. 314, 319 (Bankr.W.D.Ark.2009). What remains in dispute is the allowed amount of Schmieding's claim. Because the debtor is the objecting party, the Court places the initial burden of proof on all questions of fact on the debtor.

### 1. The debtor's admission objection

The debtor's first objection is that Schmieding is not entitled to PACA pro-

tection for $9247.34, based on Schmieding's own admission. The Court will sustain the debtor's objection based on Schmieding's acknowledgment that the $9247.34 to which the debtor objected was not included in Schmieding's PACA claim of $1,237,547.02.[1] The remaining objections will be addressed in order.

## 2. The debtor's interest objection

The debtor's second objection is that Schmieding charged an interest rate in excess of the maximum allowed rate of interest in Arkansas, which, according to the Arkansas Constitution, is 17% per annum. On its invoices, Schmieding includes the following language: "Interest at 1.5% per month added to unpaid balance." Schmieding argues that "the structure and purpose of PACA's scheme of federal regulation of interstate produce sales is so pervasive that the reasonable inference is that PACA preempts the field as to produce sales." (Schmieding Post–Trial Br., p. 2).

■ Congress has the power to preempt state law. U.S. Const. art. VI, cl. 2; *see also Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). The Supreme Court has found that state law must yield to federal law in at least two circumstances: first, in the event that Congress intends federal law to "occupy the field," and, second, if state law "is naturally preempted to the extent of any conflict with a federal statute." *Crosby,* 530 U.S. at 372, 120 S.Ct. 2288 (citing *Hines v. Davidowitz,* 312 U.S. 52, 66–67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). Preemption occurs when state law "stands as an obstacle" to the purpose of federal law. *Id.* at 373, 120 S.Ct. 2288. State law is nullified

to the extent it actually conflicts with federal law; however, state law is not necessarily displaced in its entirety. *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *see also Dairy Fresh Foods, Inc. v. Ramette (In re Country Club Mkt., Inc.),* 175 B.R. 1011, 1015 (Bankr.D.Minn.1994) ("courts must sustain local regulations unless there is conflict with the federal scheme").

■■ Interest is allowed as a contractual right if it is provided for in the contract. In this instance the parties' two-page contract is silent concerning interest. However, the inclusion of the interest rate of 1.5% per month on the billing invoices used by Schmieding amounts to an additional contract term under both the Uniform Commercial Code and Arkansas law. *See* Ark.Code Ann. § 4–2–207 (Repl.2001). The debtor has not objected to the additional term of the contract; rather, the debtor has objected to the claimed rate of interest as being in violation of Arkansas law and argues that all of the interest charged should be denied. As stated above, under the Arkansas Constitution, the maximum rate of interest on contracts "shall not exceed seventeen percent (17%) per annum." Ark. Const. amend. 89, § 3. The Constitution also includes a penalty clause: If an Arkansas contract exceeds the maximum allowed rate of interest, the contract is void as to principal and interest. Ark. Const. amend. 89, § 6. According to the parties' contract, the contract between the debtor and Schmieding is governed by Arkansas law.

■ The Court finds that interest that is owed as part of the parties' contractual agreement is a sum owing in connection

---

1. Schmieding's initial PACA proof of claim that was filed on December 23, 2013, was in the amount of $1,246,794.36. Schmieding stated in its post-trial brief that it is owed $1,237,547.02, plus fees, costs, and interest. The difference is $9247.34.

with Schmieding's PACA claim. *See, e.g., Pac. Int'l Mkt., Inc. v. A & B Produce, Inc.,* 462 F.3d 279, 285–86 (3d Cir.2006) (finding that "sums owing" includes related expenses that are contractually due); *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.,* 307 F.3d 1220, 1222–23 (9th Cir.2002) (" 'in connection with' encompasses not only the price of the perishable agricultural commodities but also additional related expenses, including contractual rights to attorneys' fees and interest, in a PACA claim.").[2] As a result, because interest is an element of the PACA transaction, federal preemption applies and the Court must nullify state law to the extent it conflicts with the PACA statute. The Court finds that the Arkansas law that voids a contract as to principal and interest is preempted by the PACA statutes that require "full payment of the sums owing in connection with" a PACA claim. 7 U.S.C. § 499e(c)(2). However, while the PACA statute allows for the payment of the sums owing in connection with the transaction, it is silent with regard to the amount of interest a party can charge under the parties' contract. Because there is no conflict between federal law and Arkansas law that sets the maximum rate of interest at 17% per annum, the Court finds that Schmieding is limited under Arkansas law to charge no more than 17% interest per annum. The Court sustains the debtor's objection to the amount of interest charged by Schmieding in part and limits Schmieding's recovery to no more than 17% interest per annum.

### 3. The debtor's agency objection

#### A. Common law of agency

The debtor's third objection is that Schmieding, acting as an agent of the debtor, charged a secret profit and may have breached its fiduciary duty by marking up freight charges and charging for other non-produce items. Schmieding denies that the contract established an agency relationship and argues that the debtor agreed to the freight charges as being reasonable.

PACA is a federal statute that is intended to have uniform nationwide application. As such, the Court must look to the general common law of agency rather than the law of the state of Arkansas to determine whether an agency relationship was present between the debtor and Schmieding. *See, e.g., Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 740, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (finding that federal rule of agency, rather than state agency law, is appropriate when defining terms under Copyright Act of 1976). According to the Restatement (Third) of Agency, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). Proceeding under the common law of agency, the Court finds that Schmieding was not an agent of the debtor because it was not subject to the control of the debtor when it procured freight services for the debtor.

The shipping arrangement between the parties appears simply to be an agreement between themselves. Although the contract between the parties is identified as an f.o.b. contract, the debtor requested

---

**2.** See also this Court's opinion dated July 30, 2014, discussing the statutory obligation for the buyer to pay all "sums owing in connection with" a PACA transaction, including freight, fuel surcharges, and interest. *Allens, Inc. and All Veg, LLC v. D & E Farms, Inc.,* No. 5:13–bk–73597 [doc. 1045] (Bankr. W.D.Ark. July 30, 2014).

additional services from Schmieding beyond the f.o.b. contract; specifically, the procurement of freight services.[3] After negotiating a reasonable price with the debtor, Schmieding agreed to provide transportation services for the debtor in addition to its produce contract. The debtor was aware that it could have arranged for the same services from any other carrier of its choice. Josh Allen, CEO of the debtor, testified that Schmieding controlled all of the freight arrangements for getting the carrots to the debtor after the debtor let Schmieding know the quantity of product and location for delivery. Specifically:

- the debtor did not specify a carrier that Schmieding was to use;

- the debtor did not specify the length of time carrots should be in transit;

- the debtor never specified how the carrots were to be loaded in the trucks;

- the debtor rarely communicated with a specific carrier to determine pick up or arrival time; and

- the debtor did not have a role in overseeing payments to the specific carriers. All of these matters were under the control and direction of Schmieding, not the debtor. According to Ed Cook, sales manager for Schmieding, Schmieding also had control of the mode of transportation, even though the produce was always shipped by truck. Josh Allen testified that when a load arrived at its destination, if the truck needed to wait before being unloaded, then Schmieding—not the debtor—would have to make that request to the carrier, even though the detention was for the ultimate benefit of the debtor.

Other than agreeing to provide the freight services for the debtor, the Court cannot discern any other evidence that Schmieding had the authority to act for or on behalf of the principal. Schmieding acted on the debtor's behalf in procuring freight services but was not subject to the debtor's control. Schmieding determined all of the methods and details of how it would ultimately comply with its shipping agreement with the debtor. Josh Allen testified that he considered Schmieding to be a "one-stop shop." Additionally, neither party introduced any evidence that either party manifested an intent to create an agency relationship or assent to that relationship, which is also required under the Restatement (Third) of Agency. *See, e.g., B & G Enter., Ltd. v. United States,* 220 F.3d 1318, 1323 (Fed.Cir.2000) (citing Restatement (Second) of Agency § 1(1)). Accordingly, the Court finds that Schmieding was not an agent of the debtor under the common law of agency when it provided freight services for the benefit of the debtor.[4]

### B. Agency and the parties' contract

■ Although no agency relationship exists under common law, an agency rela-

---

**3.** An f.o.b. sale
means that the produce quoted or sold is to be placed free on board the boat, car, or other agency of the through land transportation at shipping point, in suitable shipping condition ..., and that the buyer assumes all risk of damage and delay in transit not caused by the seller irrespective of how the shipment is billed.
7 C.F.R. § 46.43(i).

**4.** Even under Arkansas law, the Court would not be able to find an agency relationship between the parties. For comparison, there are two essential elements of an agency relationship under Arkansas law: "(1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control." *Sterne, Agee & Leach, Inc. v. Way,* 101 Ark. App. 23, 270 S.W.3d 369, 375–76 (2007). As stated above, Schmieding was not subject to the debtor's control in procuring freight services for the debtor.

tionship could have been created under the terms of the parties' contract. The parties' contract states under the price term that it is "FOB FROM WISCONSIN." In a typical f.o.b. contract, the buyer is responsible for the cost of the freight and assumes all risk of damage and delay from the place of origin identified in the contract, in this case from Wisconsin. The debtor's and Schmieding's written contract is silent with regard to freight. However, the parties were in agreement that Schmieding would handle the freight services for the debtor based on a negotiated and agreed to pricing structure referred to as a "matrix." Ed Cook testified that this is the way the parties had done business for over 45 years. For the reasons discussed below, the Court finds that this independent freight arrangement between the parties changes the contract between the parties from an f.o.b. contract to an f.o.b. sale at delivered price contract.[5] Regardless, finding that the parties' contract is f.o.b. sale at delivered price does not affect the Court's finding that Schmieding is not an agent for the debtor; the debtor's agency argument fails under either an f.o.b. contract or an f.o.b. sale at delivered price contract.

### i. The debtor's agency argument under an f.o.b. contract

Presuming it to be an f.o.b. contract, the debtor, in support of its argument that Schmieding breached its fiduciary duties as an agent of the debtor, quotes from a

USDA decision under PACA. The judicial officer states that in an f.o.b. sale, "if the seller initially finds a trucker, pays the freight and invoices the buyer for the freight, the seller is, as a matter of law, the agent of the buyer." *Pappas & Co., Inc. v. Papazian Dist. Co., Inc.*, 46 Agric. Dec. 1882, 1885 (U.S.D.A.1989) (quoting *In re Ben Gatz Co.*, 38 Agric. Dec. 1038, 1039–40 (U.S.D.A.1979)). The *Pappas* decision continues:

Under the law of agency, such a seller is in a fiduciary capacity and cannot make a secret profit on the freight. The seller can, of course, charge the buyer whatever fee or service charge is agreed upon to compensate him for procuring the truck and paying the freight, but this must be disclosed to the buyer. In the absence of an agreement and disclosure, the buyer has the right to assume that the amount of freight shown on the invoice is the amount of freight paid by the seller on the buyer's behalf.

*Id.* The distinguishing feature of the *Pappas* case that sets it apart from the matter presently before this Court is that in *Pappas*, Pappas was a broker.[6] As a broker, by definition, Pappas was acting "for or on behalf of the vendor or the purchaser...."[7] When Pappas offered to secure transportation for the complaining party, it was acting as an agent of the complaining party. The *Pappas* court found that as an agent, Pappas owed the complaining party a fiduciary duty to secure transportation at or near market rates. *Id.* However, in the

---

**5.** An f.o.b. sale at delivered price "means the same as f.o.b., except that transportation charges from shipping point to destination shall be borne by the seller; that is, the sale is f.o.b. as to grade, quality, and condition, and delivered as to price." 7 C.F.R. § 46.43(ee).

**6.** The Court does not know whether the *Ben Gatz* decision quoted by the *Pappas* court also involved a broker. The judicial officer stated in his decision that "[s]ince there is adequate

evidence to support Judge Palmer's findings, detailed findings and conclusions are not necessary." The Court was not able to locate Judge Palmer's findings.

**7.** A "broker" is defined as "any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser, respectively...." 7 U.S.C. § 499a(b)(7).

present case, Schmieding was not operating as a broker for the debtor. It was operating as either a shipper,[8] as Cook testified, or a dealer.[9]

### ii. The contract as f.o.b. sale at delivered price

As stated previously, based on the parties separately negotiated freight arrangement, and despite the parties' identification of the contract as an f.o.b. contract, the Court finds the contract is an f.o.b. sale at delivered price contract. *See, e.g., C.J. Prettyman, Jr., Inc. v. American Growers, Inc.*, 55 Agric. Dec. 1352, 1996 WL 935373 (U.S.D.A.1996) (finding that contract identified as "f.o.b. delivered" was an f.o.b. sale at delivered price contract); *In re Ben Gatz Co.*, 38 Agric. Dec. 1038 (U.S.D.A.1979) (affirming finding of Administrative Law Judge that "f.o.b." used in contract actually meant delivered sale and recognizing that "f.o.b." could have meant f.o.b. sale at delivered price). Under an f.o.b. sale at delivered price contract, Schmieding is responsible for the transportation charges from the shipping point to the destination. Ed Cook testified that Josh Allen would depend on Schmieding to transport the produce to the debtor's processing plant. Schmieding would arrange and pay for the freight and bill the debtor, but the debtor was ultimately responsible for paying the freight charges. Ed Cook further testified that he and Josh Allen would discuss a freight price range for a growing season and then, after deliv-

eries started, Schmieding would provide the debtor (typically Josh Allen) a daily disclosure of the freight rates for each load—the matrix—based on the negotiated range to which both parties had previously agreed.

Even though he testified that he considered Schmieding a "one-stop shop," Josh Allen also testified that when he received the disclosure of freight rates from Schmieding, he would sometimes test the reasonableness of the charges by cross-checking the specific freight charges with the debtor's internal traffic department and comparing the charges with raw product deliveries from the same geographic region. He also testified that his understanding was that the matrix upon which the freight was based was not Schmieding's actual cost but, rather, Schmieding's bill to the debtor. The parties' testimony about how the shipping of produce was handled weighs more to an f.o.b. sale at delivered price contract than an f.o.b. contract and the Court finds that the contract between the parties is an f.o.b. sale at delivered price contract.

Under an f.o.b. sale at delivered price contract, Schmieding was to bear the transportation cost, which it did after negotiating a fair price with the debtor. The average freight bill paid by Schmieding was $2196 and the average freight charge to the debtor was $2410. This amounts to an average difference of $214 per invoice, or approximately 10%.[10] Schmieding pro-

---

**8.** A "shipper" is defined as "any person operating at shipping point who is engaged in the business of purchasing produce from growers or others and distributing such produce in commerce by resale or other methods...." 7 C.F.R. § 46.2(*o* ).

**9.** A "dealer" is defined as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural

commodity in interstate or foreign commerce...." 7 U.S.C. § 499a(b)(6).

**10.** Of the 133 invoices presented to the Court, the highest commission or service charge was 37% and the lowest was –26%. It is possible that given Schmieding's 45 year history with the debtor, it was able to estimate with a fair amount of accuracy the freight rate it needed to charge in order to have an approximate 10% commission for its services at the end of

cured freight services for the debtor in addition to the parties' produce contract under a separate negotiated agreement. Because Schmieding was not acting as an agent for the debtor, it could charge whatever amount the parties agreed upon, which it did. In the absence of an agency relationship between the parties, the Court overrules the debtor's third objection in its entirety. Additionally, by providing freight services to the debtor in connection with the perishable agricultural commodities, the Court finds that Schmieding's freight charges are sums owing in connection with the PACA transaction and payable under the PACA trust.

### 4. The debtor's books and records objection

The debtor's final objection is that the debtor's books and records reflect an amount owing to Schmieding less than what Schmieding alleges is owed. There are four subparts to the debtor's "books and records" objection that, according to the debtor, require a reduction in Schmieding's claim: first, that Schmieding failed to provide the debtor with evidence of the existence of Invoice 101965 in the amount of $4886.70; second, that Schmieding used the wrong price for either its produce cost or freight cost on twenty-eight of its invoices; third, that Schmieding improperly included detention charges on ten of its invoices; and fourth, that Schmieding used the incorrect weight on two of its invoices.

For its first books and records objection, the debtor alleges that Schmieding failed to provide the debtor with evidence of Invoice 101965. After disclosing that Schmieding had not included Invoice 101965 with its exhibits, at trial the debtor agreed to allow Schmieding the opportunity to locate the missing exhibit. Both parties agreed that if Schmieding could not locate the exhibit, Schmieding's claim for the amount of the invoice would be withdrawn. As part of the agreement, the debtor requested that the invoice be provided to the debtor prior to May 29, 2014. In the debtor's post-trial brief that was filed on June 5, 2014, the debtor stated that "Schmieding failed to provide any evidence of the existence of Invoice 101965, warranting a reduction in the amount of $4,886.70." However, Schmieding responded to the debtor's brief, stating that it had provided a copy of the invoice to the debtor's counsel. In its response, which was sent to the Court, Schmieding included a copy of the email transmission to the debtor from May 21 and a copy of Invoice 101965. Although Invoice 101965 was not introduced as evidence during the trial, based on the statements on the record allowing for the later exchange of the invoice, the Court will admit Invoice 101965. No other objection to the invoice was raised at trial and the Court accepts the invoiced amount as a valid part of Schmieding's PACA trust claim and overrules the debtor's objection to the invoice.

For its second books and records objection, the debtor alleges that Schmieding used the wrong price for either its produce cost or freight cost on twenty-eight of its invoices. According to the debtor, Schmieding used the wrong price for potatoes on Invoice 104625, charging $10.00 per cwt instead of $9.75 per cwt.[11] Neither party introduced a contract for potatoes with which the Court could verify the agreed upon charge for potatoes. Josh Allen testified that the potatoes were typically bought on an open market basis without a contract but did not testify as to the actual price paid on the open market. An

---

the growing season. If that is the case, it succeeded.

11. Cwt is an abbreviation for hundredweight, or 100 pounds.

employee of the debtor testified that she believed the price for potatoes was $9.75 per cwt and that she would have received that price from Josh Allen. The Court finds that the debtor's witness was credible and Schmieding did not refute her testimony. Accordingly, the Court sustains the debtor's objection to Invoice 104625 and allows it in the amount of $5411.25, a deduction of $138.75.

■ The remaining twenty-seven invoices all involved alleged improper freight calculations. Freight was charged to the debtor by Schmieding based on a matrix that was provided to the debtor each day. Although Schmieding introduced a similar matrix related to the shipment of carrots from Georgia, neither party introduced the daily freight matrix related to the invoices to which the debtor objected. The purpose of the adjustment that appears on the invoices was to reflect the correct freight rate that was allegedly agreed to by the debtor and Schmieding. Without the matrix or some other evidence of the parties' agreement, the Court is presented with two credible witnesses—Josh Allen and Ed Cook—who each explain a process for which they are in agreement. The disagreement, and the basis for the debtor's objection, is the actual agreed upon amount Schmieding was to charge the debtor for freight. Without that critical piece of evidence, the Court finds that the debtor failed to meet its burden of proof and overrules the debtor's objection to the improper freight calculations.

■ For its third books and records objection, the debtor alleges that Schmieding improperly included detention charges on ten of its invoices. The Court finds that the detention charges were properly included on Schmieding's invoices. The carrot contract between the parties is al-

leged to be an f.o.b. contract. In other words, "the buyer assumes all risk of damage and delay in transit not caused by the seller irrespective of how the shipment is billed." 7 C.F.R. § 46.43(i). As stated earlier, however, the Court finds that the contract is more in the nature of an f.o.b. sale at delivered price contract. Under an f.o.b. sale at delivered price contract, shipping charges shall be borne by the seller. Both parties stated that they never discussed detention charges when they agreed that Schmieding would provide the freight for the debtor. Josh Allen testified that whenever a delivery was detained after the debtor had accepted the load, it was detained at the request of Schmieding but for the benefit of the debtor.[12] Regardless of whether the contract was f.o.b. or f.o.b. sale at delivered price, the debtor was aware that it was ultimately liable for all related delivery charges, which is evidenced by four of the specific invoices to which the debtor has objected. These invoices were for loads of carrots that were rejected by the debtor because the carrots sat for an extended period of time (presumably at the delivery location). The debtor did not object to the total invoice, which included the cost of carrots, freight, and detention; it only objected to the detention charge. The detention charges on each of these invoices are directly related to a delay caused by the debtor, not caused by Schmieding. Accordingly, the Court finds that the debtor is responsible for these charges and overrules the debtor's objection to the detention charges.

Finally, for its fourth books and records objection, the debtor alleges that Schmieding used the incorrect weight on two of its invoices. After a careful review of the numerous documents that were introduced at trial, the Court is unable to locate a weight ticket to support the debtor's claim

---

12. This comports with the Court's finding that Schmieding was not an agent of the debtor;

otherwise, the debtor could have requested the detention itself.

of overcharge. Without documented proof of the actual weight of the carrots from either the debtor's or Schmieding's records, the Court overrules the debtor's objection to the last two invoices for the debtor's failure to meet its burden of proof.

**Conclusion**

For the reasons stated above, the Court sustains the debtor's objection to Schmieding's proof of claim for PACA trust protection for $9247.34; sustains in part the debtor's objection to the interest rate charged by Schmieding, limiting that interest to no more than 17% interest per annum; overrules the debtor's objection that Schmieding charged a secret profit and may have breached its fiduciary duty as an agent by marking up freight charges and charging for other non-produce items; and overrules in part the debtor's objection to the amount owed Schmieding based on the debtor's own books and records. The Court sustains the debtor's books and records objection to Invoice 104625 and allows it in the amount of $5411.25, a deduction of $138.75.

IT IS SO ORDERED.